O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| THE DANIEL AND FRANCINE SCINTO FOUNDATION,<br><br>        Plaintiff,<br><br><br>        vs.<br><br>CITY OF ORANGE,<br><br>        Defendant. | Case No.: SA CV 15-1537-DOC (JCGx)<br><br><br><br><br>ORDER DENYING MOTION FOR<br>SUMMARY JUDGMENT [17] |

Before the Court is Plaintiff The Daniel and Francine Scinto Foundation's ("Scinto Foundation" or "Plaintiff") Motion for Summary Judgment ("Motion") (Dkt. 17).

I.    **Facts**[1]

Generally, this case arises out of Plaintiff's allegations that Defendant City of Orange ("City" or "Defendant") deprived Plaintiff of and interfered with Plaintiff's use of its building, primarily by failing to keep required permits and plans for Plaintiff's building and creating the mistaken belief Plaintiff was in violation of various regulations. *See* Mot. at 1.

As a preliminary matter, the Court notes it has struggled to discern the facts surrounding this case. Neither Plaintiff's Motion nor the Statement of Undisputed Material Facts ("SUF") (Dkt. 14-4)[2] describes the facts or the timeline of events in any coherent fashion. Indeed, the Motion – which does not include any citations to the SUF – does not include a statement of facts.

Plaintiff is the owner of a building located at 1624 West Katella Avenue in Orange, California. Second Amended Complaint ("SAC") (Dkt. 1-1); *see also* Declaration of Daniel J. Scinto ("D. Scinto Decl.") (Dkt. 14-5) ¶¶ 1–2. Daniel and Francine Scinto, who founded Plaintiff Scinto Foundation, donated the building to Plaintiff. *See* Declaration of Francine Scinto ("F. Scinto Decl.") (Dkt. 14-8) ¶¶ 1–3.[3]

In 2012, after a routine fire inspection, "Fire personnel" from the City of Orange Fire Department ("Fire Department") reported potential Fire Code violations could exist at Plaintiff's building. Declaration of Rosalva Flores ("Flores Decl.") (Dkt. 19-2) ¶ 2. After these potential violations were identified, the matter was referred to Rosalva Flores ("Flores"), a Hazardous Material Specialist for the Fire Department, for "follow up." *Id.*

---

[1] To the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court did not rely on the disputed evidence.

[2] As discussed in further detail below, the Court struck the docket entry containing Plaintiff's SUF (Dkt. 16). Plaintiff never refiled its SUF. It is unclear whether Plaintiff is relying on the stricken SUF. Nonetheless, the Court will consider Plaintiff's stricken SUF.

[3] The Court struck both of these declaration and Plaintiff never refiled them. Nonetheless, the Court will consider the declarations.

¶ 3. Flores states she "visited the property" and "found evidence the tenant [The Breath of Spirit Ministries] may have committed an unpermitted occupancy change to assembly use, there was an incomplete fire detection system and an individual was living in the attic space of the building." *Id.* Flores further states that, after she "engaged in months of failed negotiations with the tenant to correct the alleged violations," the tenant vacated the premises. *Id.* ¶ 4.[4]

Once the tenant moved out, Flores contacted the owner of the building, the Scinto Foundation, "to correct the remaining issues." *Id.* Defendant asserts it had "voluminous records on file concerning the building but the records were difficult to read and/or did not explain the square footage of the building that was being used by the tenant" *Id.* ¶ 5.[5] Therefore, Flores requested additional information from the Scinto Foundation. *Id.* Defendant states Plaintiff's representative, Gabrielle Yacoob ("Yacoob") did not respond to its requests for information, but rather demanded Defendant "prove its position" regarding fire detection requirements. *Id.* ¶ 6.

Daniel Scinto states Yacoob informed him "a red flag was placed on the building . . . due to alleged building violations," and therefore Plaintiff "could not occupy the building until the Foundation met certain conditions." D. Scinto Decl. ¶ 7. According to Plaintiff, Defendant knew Plaintiff was under the impression it could not lease the building. SUF No. 1; *id.* Nos. 4–6. Defendant disputes this account.

In December 2015, "the property had an extensive fire," and the Building Division of the City of Orange Community Development Department "determined it was unsafe to occupy due to the damage." *Id.* ¶ 8. Since then, "no permits have been pulled for re-construction of the property." *Id.*

---

[4] Plaintiff asserts Defendant "forced" this tenant out. *See, e.g.*, F. Scinto Decl. ¶ 5.
[5] Plaintiff contends Defendant did not keep official records of applications received, permits and certificates issued, fees collected, records of inspections, and notices and orders issued. SUF No. 8.

## II.      Procedural History

Plaintiff filed suit on February 17, 2015 in Orange County Superior Court. *See* Notice of Removal (Dkt. 1). Defendant removed the action to this Court on September 23, 2015. *See id.*

In the SAC – the operative complaint – Plaintiff alleges the following claims against Defendant: 1) inverse condemnation, 2) nuisance, 3) interference with a contractual relationship, and 4) "discriminatory zoning laws against churches." *See generally* SAC.

On July 1, 2016, Plaintiff filed its Motion for Summary Judgment (Dkt. 14). The Court struck the Motion for failure to comply with Local Rule 11-6 (Dkt. 16).

On July 6, 2016, Plaintiff refiled its Motion. Defendant opposed on July 11, 2016 (Dkt. 19), and Plaintiff replied on July 18, 2016 (Dkt. 22).

## III.      Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## IV.     Discussion

Plaintiff moves for summary judgment on all four of its claims. *See* Mot. at 1. As a threshold matter, the Court finds it prudent to reiterate the summary judgment standard. Plaintiff asserts "Defendant has the burden to raise material issues of fact to defeat summary judgment." *Id.* at 4–5. However, as set forth above, the moving party – here Plaintiff – bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323; *see id.* ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (citation omitted). If the moving party meets its burden, then the burden shifts to the opposing party – here Defendant – to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49.

1   The Court will address Plaintiff's arguments concerning each claim below. First,

2   however, the Court must determine whether it should decline to reach the merits of

3   Plaintiff's Motion on the grounds that Plaintiff failed to meet and confer prior to filing

4   its Motion.

5   **A. Failure to Meet and Confer**

6   Defendant asks the Court to deny the instant Motion on the grounds that neither

7   Plaintiff's original nor refiled Notice of Motion references any attempt to engage in a

8   meeting of counsel prior to the filing of the Motion as required by Local Rule 7-3.

9   Opp'n at 4. Defendant also states Plaintiff never made any attempt to meet and confer.

10  *Id.*

11  Pursuant to Local Rule 7-3, "counsel contemplating the filing of any motion shall

12  first contact opposing counsel to discuss thoroughly, preferably in person, the substance

13  of the contemplated motion and any potential resolution. The conference shall take place

14  at least seven (7) days prior to the filing of the motion." The Court may, in its discretion,

15  refuse to consider a motion for failure to comply with Local Rule 7-3. *See, e.g.*, *Manning*

16  *v. Dimech*, No. CV1505762RSWLPJWX, 2015 WL 9581795, at *3 (C.D. Cal. Dec. 30,

17  2015); *Reed v. Sandstone Properties, L.P.*, No. CV 12-05021 MMM VBKX, 2013 WL

18  1344912, at *6 (C.D. Cal. Apr. 2, 2013). "Failure to comply with the Local Rules does

19  not automatically require the denial of a motion, however, particularly where the non-

20  moving party has suffered no apparent prejudice as a result of the failure to comply."

21  *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088

22  (C.D. Cal. 2015). The Court therefore elects to consider the merits of Plaintiff's Motion.

23  However, the Court strongly admonishes Plaintiff of the seriousness of failure to comply

24  with the Local Rules and cautions all parties to fully comply with all local rules when

25  filing future motions.[6]

26

27  ---
   [6] As set forth above, Plaintiff originally filed its Motion for Summary Judgment on July 1, 2016. However, because

28  that filing did not comply with the local rules concerning page limits, the Court struck it and ordered Plaintiff to file
    a corrected Motion by July 6, 2016 (Dkt. 16). Defendant argues Plaintiff's refiled Motion is untimely and urges the
    Court to deny the Motion on that basis. Opp'n at 4. The Court declines to take such drastic action, however,
    especially considering Plaintiff originally filed a Motion for Summary Judgment on July 1, 2016.

**B.  The Alleged Failure to Keep Records**

At the outset of its Motion, Plaintiff broadly argues the Court should grant summary judgment as to Plaintiff's first three claims – inverse condemnation, nuisance, and interference with contractual relationships – based on the "uncontested fact that the Defendant[] failed to keep adequate records" as required by California Health & Safety Code § 19850 and California Building Code § 104.7.[7] Mot. at 2; *see* SUF No. 8 ("The Defendant[] failed [its] mandatory duty of keeping official records of applications received, permits and certificates issue[d], fees collected, reports of inspections, and notices and orders issued."). Plaintiff fails to coherently explain how a finding that Defendant did not comply with record retention requirements relates to each specific claim and the elements of each of each claim. Nonetheless, before turning to the specific claims, the Court will address the assertion that there is no genuine dispute as to whether Defendant failed to keep required records.

The Court finds there is a dispute of material fact as to whether Defendant failed to keep certain records. First, Plaintiff fails to adequately set forth what specific records Defendant failed to keep. Moreover, in support of its broad assertion concerning Defendant's recordkeeping, Plaintiff cites only to the Deposition of Rosalva Flores ("Flores Depo.") (Dkt. 24). In particular, Flores testified as follows:

> Q: "The City does not have any records of plans or permits for the second floor construction on the south side of this building." Was that true as of January 23rd, 2014?
>
> A: Yes, to my knowledge, yes.
>
> Q: Well, you had microfiche, did you not?
>
> A: Yes.

---

[7] California Health & Safety Code § 19850 provides, in relevant part: "The building department of every city or county shall maintain an official copy which may be on microfilm or other type of photographic copy, of the plans of every building, during the life of the building, for which the department issued a building permit." California Building Code § 104.7 provides, "The building official shall keep official records of applications received, permits and certificates issued, fees collected, reports of inspections, and notices and orders issued. Such records shall be retained in the official records for the period required for retention of public records."

Q: And did that – did the microfiche reflect any form of construction as described in this e-mail on the south side of the building?

A: It showed the mezzanine construction, not a second floor.

Q: And the reason you are distinguishing second floor construction from the mezzanine area is that it's your interpretation or the position of the City that second floor construction would be an improvement of that area beyond the mezzanine area, correct?

A: Correct.

. . .

Q: But the walls and other improvements that in the earlier e-mail indicated had been done subsequent to 1998, in fact, were the improvements that you felt were not permitted in any way?

A: That's correct.

*Id.* at 224:23–226:2. The Court cannot conclude this testimony shows Defendant failed to keep "official records of applications received, permits and certificates issue, fees collected, reports of inspections, and notices and orders issued." Moreover, other evidence in the record supports the Court's conclusion there is a dispute of material fact. In particular, Yacoob testified as follows:

Q: And when you went to the Building Department, what type of plans did you see?

A: I saw plans of 1624 West Katella.

Q: Where did you find those plans?

A: On the microfiche.

. . .

Q: And what plans did you find on the microfiche?

A: I do not recall at this time specifics.

Q: What do you recall finding?

A: Plans for 1624 West Katella.

Q: What more than plans? Do you recall dates of plans?

A: No.

. . .

A: At one point in time I tried to meet Rosie Flores to show her a certain set that showed the second floor on the microfiche.

Yacoop Depo. at 28:11–29:17.

Further, Defendant offers evidence concerning how the Community Development Department maintains records and indicating the files concerning the property at 1624 West Katella "are consistent with" Defendant's "retention policies." *See* Declaration of Mark Ibrahim ("Ibrahim Decl.") (Dkt. 19-3) ¶¶ 2–4.

Based on the foregoing, the Court concludes there is a dispute of material fact as to whether Defendant failed to keep certain records. Thus, Plaintiff is not entitled to summary judgment on this basis.

### C. Inverse Condemnation

Plaintiff moves for summary judgment as to its inverse condemnation claim, arguing "[t]he regulatory conduct of the Defendant has deprived the Plaintiff of the ability to rent, lease or use the building thereby substantially depriving the Plaintiff of the use of the property; thereby depriving Plaintiff of its rights pursuant to Article 1, Section 19 of the California Constitution and inversely condemning the property." Mot. at 7–8.

### 1. Legal Standard

Article I, § 19 of the California Constitution provides, in relevant part, that "[p]rivate property may be taken or damaged for public use only when just compensation . . . has first been paid to, . . . or for, the owner." "Although the "California Constitutional 'takings' clause at art. I., § 19, 'protects a somewhat broader range of property values than does the corresponding federal provision,' California courts have 'construed the clauses congruently' and applied federal law in analyzing state law claims.'" *Sanchez v. City of Los Angeles*, No. CV09-8920-SJO (RNB), 2010

WL 2569049, at *17 (C.D. Cal. May 26, 2010), *report and recommendation adopted*, No. CV 09-8920-SJO (RNB), 2010 WL 2572615 (C.D. Cal. June 18, 2010) (quoting *San Remo Hotel v. City & Cnty. Of San Francisco*, 27 Cal. 4th 643, 663–64 (2002)).

"The takings clause applies to two types of government action: (a) the taking of physical possession of property or of an interest in that property for a public use; and (b) the regulatory prohibition on private use." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1105 (E.D. Cal. 2012). The second type – which is at issue here – "involves the state imposition of a regulation that prohibits or prevents property owners from using their property in a way that diminishes its value." *Id.* (citation and internal quotation marks omitted); *see also Cty. of Alameda v. Superior Court*, 133 Cal. App. 4th 558, 566 (2005).

California provides a state law cause of action for inverse condemnation. *Valenciano v. City & Cty. of San Francisco*, No. C 07-0845 PJH, 2007 WL 3045997, at *6 (N.D. Cal. Oct. 18, 2007). Inverse condemnation actions "provide a vehicle for property owners to obtain 'just compensation.'" *Regency Outdoor Advert., Inc. v. City of Los Angeles*, 39 Cal. 4th 507, 516, 139 P.3d 119, 123 (2006), *as modified* (Oct. 11, 2006).

Under California law, "before a Plaintiff may establish a regulatory taking, it must first demonstrate that it has received a final decision from the land use authority regarding application of the challenged land use regulation to its property." *Morrow v. City of San Diego*, No. 11-CV-1497-IEG WVG, 2012 WL 112542, at *6 (S.D. Cal. Jan. 11, 2012) (quoting *Cty. of Alameda*, 133 Cal. App. 4th at 567) (internal quotation marks omitted); *see also Meeker v. Belridge Water Storage Dist.*, No. 1:05-CV-00603OWWSMS, 2005 WL 6246803, at *9 (E.D. Cal. May 3, 2005) ("As a general rule in California, an inverse condemnation claim based on an as-applied challenge to a regulation is not ripe until plaintiffs have exhausted the available administrative

remedies (e.g., seeking a variance).”); *Patrick Media Grp., Inc. v. California Coastal Com.*, 9 Cal. App. 4th 592, 607 (1992).[8]

“The property owner bears a heavy burden of showing that a regulation as applied to a particular parcel is ripe for a taking claim.” *Morrow*, 2012 WL 112542, at *6 (quoting *Cty. of Alameda*, 133 Cal. App. 4th at 567) (internal quotation marks omitted). A property owner “can show that a final decision has been made for ripeness purposes only when it can set forth facts that make a clear, complete, and unambiguous showing that the agency has drawn the line, clearly and emphatically, as to the sole use to which the property may ever be put.” *Id.* (citing *Cty. of Alameda*, 133 Cal. App. 4th at 567). Courts have concluded that, to do so, a plaintiff “must establish that it has been thoroughly rejected, and that it has submitted at least one meaningful application for a development project which has been thoroughly rejected, and that it has prosecuted at least one meaningful application for a zoning variance, or something similar, which has been finally denied.” *Id.* (citation omitted).

### 2. Discussion

The Court finds summary judgment is unwarranted on Plaintiff's inverse condemnation claim. Plaintiff's Motion fails to clearly set forth exactly what regulatory actions are at issue here. Plaintiff's SUF simply refers to “regulatory conduct.” *See* SUF No. 4 (“The regulatory conduct of the Defendants deprived the Plaintiff the ability to lease the entire premise between October 2013 to on or about April 1, 2014 by the

---

[8] The Court is unconvinced by Plaintiff's argument that “there is no requirement to exhaust all administrative remedies in a regulatory taking.” Reply at 6. First, the case law set forth above establishes the final decision requirement applies in the context of regulatory takings. Further, Plaintiff misrepresents the court's conclusions in *Hensler v. City of Glendale*, 8 Cal. 4th 1, *as modified on denial of reh'g* (Sept. 22, 1994). Contrary to Plaintiff's assertion, the *Hensler* court concluded an inverse condemnation action “may be brought immediately” “[w]hen property is damaged, or a physical invasion has taken place;” this is in contrast to the regulatory takings context, where, as the *Hensler* court made clear, requires exhaustion of remedies. *Id.* at 13–14. Finally, the court in *Patrick Media Group* rejected a challenge similar to Plaintiff's. In that case, the plaintiff argued it was not required to proceed by way of administrative mandamus because it was not contesting the validity of the permit condition, but rather, was seeking compensation for it. 9 Cal. App. 4th at 608. The court noted it had already rejected a substantially similar argument when it previously held that “*First English [Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal.*, 482 U.S. 304 (1987)] only declared that a *right to compensation existed* under the circumstances at issue therein, that is, where a taking was temporary. *First English* did not address the *procedural means* by which a claim for such compensation is asserted.” *Id.* at 609 (citing *Rossco Holdings Inc. v. State of California*, 212 Cal. App. 3d 642, 656 (1989)).

Defendant allowing the Plaintiff to believe that they could not rent out the building until legally non-required conditions were met."); SUF NO. 5 ("The regulatory conduct of the Defendants deprived the Plaintiff the ability to lease the entire second floor of the premise between on or about April 1, 2014 to on [or] about January 19, 2015.").[9] As such, based on Plaintiff's moving papers and the portions of the record cited therein, the Court concludes Plaintiff has failed to meet its burden of showing there is no genuine dispute concerning what government determinations were made concerning Plaintiff's property. For similar reasons, the Court concludes Plaintiff also has failed to demonstrate an absence of material fact as to whether any such governmental determinations constituted final, definitive decisions such that exhaustion and ripeness requirements have been satisfied.[10] *See Ryan v. Zemanian*, 584 Fed. Appx. 406 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2352 (2015) ("The district court properly denied [Plaintiff's] motion for partial summary judgment because [Plaintiff] failed to meet his burden as the party moving for summary judgment to demonstrate that there was no genuine dispute as to any material fact and that he was entitled to judgment as a matter of law.").

Based on the foregoing, the Court DENIES Plaintiff's Motion as to its inverse condemnation claim.

### D. Nuisance

Plaintiff moves for summary judgment on its nuisance claim,[11] arguing Defendant obstructed Plaintiff's free use of its property, unlawfully removed Plaintiff's tenant, and reduced Plaintiff's rental income. Mot. at 14.

---

[9] In support of SUF No. 5, Plaintiff cites "Letter from [Defendant] City Attorney Wayne Winthers to Plaintiff, January 19, 2015, Exhibit 2." Because Plaintiff fails to state the document this exhibit is attached to and identify where on the docket this exhibit can be found, the Court is left guessing as to which document Plaintiff is referring.
[10] Other than asserting "Defendant has not proposed any 'administrative remedies' whatsoever that are or were available to Plaintiff," Plaintiff does not address whether the governmental decisions were final or whether pursuing any administrative remedies would be futile. *See Cty. of Alameda*, 133 Cal. App. 4th at 568 (discussing futility exception to the ripeness doctrine and describing it as "extremely narrow"); *see also Powell v. Cty. of Humboldt*, 222 Cal. App. 4th 1424, 1434–35 (2014) (concluding "it would have been futile for the Powells to pursue the variance process the County cites as their administrative remedy" and that, "[w]ith respect to the related issue of ripeness, we believe the correspondence between the Powell's counsel and the County sufficiently established a final, definitive decision by the County").
[11] Although Plaintiff does not specify, the Court construes this as a private, rather than public, nuisance claim.

California law defines a nuisance, in relevant part, as "[a]nything which is . . . an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Cal. Civ. Code § 3479; *see also Redevelopment Agency of City of Stockton v. BNSF Ry. Co.*, 643 F.3d 668, 672 (9th Cir. 2011) (quoting *People ex re. Gallo v. Acuna*, 14 Cal. 4th 1090, 1105 (1997)). "[T]o state a claim for private nuisance a plaintiff must establish three elements: (1) the plaintiff must prove an interference with his use and enjoyment of his property; (2) 'the invasion of the plaintiff's interest in the use and enjoyment of the land [must be] substantial, i.e., that it cause[s] the plaintiff to suffer substantial actual damage;' and (3) '[t]he interference with the protected interest must not only be substantial, but also be unreasonable, i.e., it must be of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land.'" *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1135 (S.D. Cal. 2012) (quoting *San Diego Gas & Electric v. Superior Court*, 13 Cal. 4th 893, 938 (1996)); *see also Carr v. United States*, No. CVF 06-0372 LJO, 2006 WL 3355098, at *4 (E.D. Cal. Nov. 17, 2006).

In its Motion, Plaintiff generally asserts it is undisputed that Defendant interfered with Plaintiff's use and enjoyment of its property. Mot. at 14. Further, without citing to the record or any authority, Plaintiff argues it is "obvious" Defendant's interference was substantial and unreasonable because "[n]o reasonable person would simply lay over and accept $1 million or more of harm to her property of her income." Mot. at 14–15.

The Court cannot conclude Plaintiff has met its burden of demonstrating there is no genuine dispute of material fact. *See Stanley v. Novartis Pharm. Corp.*, 11 F. Supp. 3d 987, 994 (C.D. Cal. 2014) ("The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.") (citation omitted); *see Ryan*, 584 Fed. Appx. At 406 (citing *Celotex* for the rule that, "when party moving for summary judgment bears the burden of proof on an issue at trial, the party must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party"). The only evidence

Plaintiff offers in support of its argument concerning this claim is Flores' deposition testimony. In particular, when asked whether she "should have corrected the misconception that Miss Yacoob had as to the impact of the flag or red flagging of the property," Flores answered yes. Flores Depo. at 231:23–232:3. Flores also testified she should have clearly identified there was no red flag and corrected "the misconception that that was impacting . . . their ability to lease the property." *Id.* at 232:4–8. Plaintiff also points to Flores' testimony that, "[a]t some point," the Fire Department "removed" the requirement that "an automatic fire sprinkler system would be required" in the building because a "plan sheet" showed approval of "construction of the mezzanine." *Id.* at 222:11–17. This evidence is insufficient to show Plaintiff is entitled to judgment as a matter of law on its nuisance claim

Even if this evidence were sufficient to show interference with Plaintiff's use and enjoyment of its property (which the Court does not find), Plaintiff has failed to point to evidence in the record (or cite any authority) showing that the interference was substantial and unreasonable. *See W. Coast Home Builders, Inc. v. Aventis Cropscience USA Inc.*, No. C 04-2225 SI, 2009 WL 2612380, at *7 (N.D. Cal. Aug. 21, 2009).[12] Accordingly, the Court DENIES Plaintiff's Motion as to its nuisance claim.

### E.  Interference with Contractual Relationships

Plaintiff moves for summary judgment on its claim for interference with contractual relationships. From what the Court can glean, Plaintiff brings a claim for intentional, rather than negligent, interference with contractual relations. *See* Mot. at 17–18. The elements of intentional interference with contractual relations are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the relationship; (5) resulting damage." *Crescent Woodworking Co. v. Accent Furniture, Inc.*, No.

---

[12] Further, even if it were undisputed Defendant failed to keep certain records (which, as discussed above, it is not), the Court cannot conclude this fact, standing alone, supports a finding that Plaintiff is entitled to summary judgment on its nuisance claim.

EDCV0401318DDPPJWX, 2007 WL 4144965, at *6 (C.D. Cal. May 7, 2007); *see also Romero v. U.S. Bank, N.A.*, No. 16-CV-02286-MMC, 2016 WL 3916384, at *5 (N.D. Cal. July 20, 2016).

The Court finds Plaintiff is not entitled to summary judgment on this claim. In support of argument, Plaintiff solely cites to an email from "Defendant's officer Ian MacDonald" dated January 27, 2014. Mot. at 18; *see* Declaration of Gabrielle Yacoob ("Yacoob Decl.") (Dkt. 14-9) Ex. 11 at 48–49.[13] Plaintiff includes the following quote from that email in its Motion: "If, following an inspection by the Building Division, you would like to lease the building, the Fire Department will support the leasing provided that 1) the fire sprinkler/alarm issue continues to make significant and consistent progress toward resolution, and that 2) both the fire insurance carrier and the tenant provide written acknowledgment of the lack of required sprinkler/alarm coverage." *Id.* Plaintiff generally argues "such actions negatively affected Plaintiff's insurance contract relationship and the freedom to contract with potential Lessees." Mot at 18.

Assuming (but not deciding) the City is not immune from liability, *see* Opp'n at 6–7, the Court cannot conclude Plaintiff has met its initial burden of showing an absence of material fact as to this claim. First, although Plaintiff asserts it is undisputed that a valid contract existed between Plaintiff and Amy's Bridal" and Plaintiff and its insurer, "Farmer's Insurance," Mot. at 17, Plaintiff does not cite any evidence in support of this claim.

Second, the Court cannot conclude there is no dispute concerning whether Defendant had knowledge of these contracts. *Id.* Plaintiff merely states that – without quoting or specifically referring to any particular section of the email – the email from Macdonald "indicates knowledge of both contracts." *Id.* This is insufficient to show Defendant had knowledge of the contracts. Based on the Court's independent review of the email, it does not appear the email specifically refers to any contracts between Plaintiff and a third party.

---

[13] The Court struck this declaration and Plaintiff never refiled it. Nonetheless, the Court will consider the declaration.

Third, the Court cannot conclude this email from MacDonald, standing alone, shows Defendant engaged in intentional acts designed to induce a breach or disruption of the contractual relationship.

Fourth, although Plaintiff asserts Defendant's "actions negatively affected" Plaintiff's contractual relationships, Plaintiff fails to direct the Court to any evidence showing an actual breach or disruption of the relationship with Amy's Bridal, or with its insurer. Finally, Plaintiff has offered no evidence or coherent explanation concerning the alleged resulting damages.

Based on the foregoing, the Court DENIES Plaintiff's Motion as to this claim.

## F. Discriminatory Zoning Laws

Finally, Plaintiff moves for summary judgment on its fourth claim – "discriminatory zoning laws against churches."[14] Mot. at 20. Plaintiff alleges a violation of RLUIPA and seemingly also asserts a claim under § 1983 for First Amendment violations. *See id.* at 21–22. From what the Court can discern – though Plaintiff does not specifically set forth the zoning law at issue – the "zoning laws" Plaintiff refers to is Section 17.18 of the City's Municipal Code, which establishes "use regulations and development standards for the City's commercial districts."

The Court will first consider whether Plaintiff is entitled to summary judgment as to its RLUIPA claim.

### 1. RLUIPA

#### a. Legal Standard

RLUIPA has various provisions limiting government regulation of land use: (1) the substantial burden provision, (2) the equal terms provision, (3) the nondiscrimination provision, and (4) the exclusions and limits provision. *See* 42 U.S.C. § 2000cc; *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1169 & n.24 (9th Cir. 2011); *see also Holy Ghost Revival Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1170–71 (W.D. Wash. 2015).

---

[14] In its Motion, Plaintiff refers to this claim as "discrimination on the basis of religion." Mot. at 20.

From what the Court can discern, Plaintiff brings its claim under the first two provisions. *See* Mot. at 4, 24. Accordingly, the Court will address only those provisions.

The first provision "provides that a government land-use regulation 'that imposes a substantial burden on the religious exercise of a [person, including a] religious assembly or institution' is unlawful 'unless the government demonstrates that imposition of the burden . . . is in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1066 (9th Cir. 2011) (quoting 42 U.S.C. § 2000cc(a)(1)). Under RLUIPA, free exercise includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). RUILPA further provides that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. § 2000cc-5(7)(B).

The second RLUIPA land-use provision "prohibits a government from imposing a land use restriction on a religious assembly 'on less than equal terms' with a nonreligious assembly." *Centro Familiar*, 651 F.3d at 1169 (citing 42 U.S.C. § 2000cc(b)).

### b. Ripeness

Before reaching the merits of Plaintiff's RLUIPA claim, the Court notes there are factual disputes concerning whether Plaintiff's RUIPLA claim is even ripe for review – an issue the parties have failed to address. *See Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 981 (9th Cir. 2011); *Reverge Alsemo v. Cty. of Shasta*, No. 2:12-00361 WBS EFB, 2013 WL 1934175, at *1 (E.D. Cal. May 9, 2013). "Ripeness is drawn from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Guatay Christian Fellowship*, 670 F.3d at 980 (citation and internal quotation marks omitted). "As such, Article III ripeness, which is a matter

of constitutional law, is jurisdictional, while '[p]rudential consideration of ripeness are discretionary.'" *Id.* (citation omitted).

To determine whether a RLUIPA claim is ripe, the Ninth Circuit has applied the *Williamson County* final decision requirement to RLUIPA claims. *See id.* (citing *Williamson Cnty. Regional Planning Comm. v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)). "The *Williamson County* final decision requirement calls for a final adjudication of the injury at the local level prior to filing federal claim." *Davis v. City of Selma*, No. 1:12-CV-01362-AWI, 2013 WL 3354443, at *5 (E.D. Cal. July 3, 2013). This requirement "is a ripeness consideration because it helps the court avoid entanglement in abstract disputes which could be more easily resolved at the local level." *Id.* (citing *Guatay Christian Fellowship*, 670 F.3d at 977); *see Guatay Christian Fellowship*, 670 F.3d at 981 ("[W]e cannot even begin to determine that the County as definitively barred the Church from using the building as it wishes until it has had the opportunity to evaluate a completed application and has determined how it will apply its land use regulations to the Church.").

Before imposing the *Williamson County* final decision requirement, "the Court must answer two threshold questions: 1) whether the Plaintiff experienced any immediate injury as a result of the City's action, and 2) whether requiring Plaintiff to pursue additional remedies would further define Plaintiff's alleged injuries." *Id.*

Here, based on the record, the Court cannot clearly discern what immediate injury Plaintiff experienced. Nor can the Court discern exactly what government action Plaintiff contends caused the injury. Plaintiff seemingly argues its tenant, Breath of the Spirit Ministries, was forced to vacate the building. *See* Reply at 3 ("[Breath of the Spirit Ministries'] tenancy was declared illegal by Defendant as a result of discriminatory zoning laws[]."). However, Plaintiff points to no evidence that supports this assertion. In passing, Plaintiff quotes from a letter from Defendant dated April 10, 2008 that apparently stated church services or religious assemblies are not permitted in the "CR

zone." Mot. at 20.[15] This quotation is unaccompanied by any citation to the record. As such, the Court is unable to make any determinations concerning this letter, including whether it is even in evidence. Further, the Court cannot discern from the parties' briefing whether requiring Plaintiff to pursue additional remedies would further define Plaintiff's alleged injuries. Based on the foregoing, the Court finds there are disputes of material fact concerning both threshold inquiries.

Even if there were no disputes of fact concerning ripeness, the Court concludes summary judgment is also unwarranted on this claim for the reasons set forth below.

### c. "Substantial Burden" Provision

To the extent Plaintiff brings a claim under the "substantial burden" provision of RLUIPA, the Court concludes summary judgment is not warranted. The analysis under the "substantial burden" provision "proceeds in two sequential steps." *Int'l Church*, 673 F.3d at 1066. "First, the plaintiff must demonstrate that a government action has imposed a substantial burden on the plaintiff's religious exercise." *Id.* "Second, once a plaintiff has shown a substantial burden, the government must show that its action was 'the least restrictive means' of 'further[ing] a compelling government interest.'" *Id.* (citation omitted).

Plaintiff claims its ability to carry out its "religious mission" was burdened because it was allegedly prohibited from renting to, and thus "supporting," a particular tenant, Breath of the Spirit Ministries. *See* Mot. at 24. Thus, it appears Plaintiff is arguing that renting to a religious institution is the activity that was substantially burdened.

Even if the Court assumes (without deciding) that renting to a religious institution constitutes religious exercise under RIULPA,[16] the Court cannot conclude Plaintiff has

---

[15] According to section 17.18.020 of the Municipal Code "CR zone" is an abbreviation for "Commercial Recreation Zone."

[16] One court in this Circuit held "RLUIPA's statutory language, its legislative history, and relevant case law establish that commercial endeavors such as that here—the sale of property for the construction of market rate condominiums—even if undertaken by the Conference in order to fund its religious mission, do not constitute 'religious exercise' protected by RLUIPA." *California-Nevada Annual Conference of the Methodist Church v. City & Cty. of San Francisco*, 74 F. Supp. 3d 1144, 1154 (N.D. Cal. 2014).

shown "the City's land use regulation . . . imposed a substantial burden on its religious exercise." *Int'l Church*, 673 F.3d at 1066. The Ninth Circuit has stated that, "[f]or a land use regulation to impose a substantial burden, it must be oppressive to a significantly great extent." *Id.* (citation and internal quotation marks omitted). "A substantial burden exists where the governmental authority puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (citation omitted).

Plaintiff fails to clearly point to any evidence showing there was a substantial burden on its free exercise. Although Plaintiff's building at 1624 West Katella Avenue is the center of this lawsuit, Plaintiff has not cited anything in the record indicating it was precluded from carrying out its "religious mission" or "engag[ing] in, conduct[ing], and promot[ing] religious . . . activities primarily in Orange County, California," F. Scinto, Decl. ¶ 1, at other locations or ways other than renting to a religious institution. *See San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004) ("[W]hile the PUD ordinance may have rendered College unable to provide education and/or worship at the Property, there is no evidence in the record demonstrating that college was precluding from using other sites within the city."); *Victory Ctr. v. City of Kelso*, No. 3:10-CV-5826-RBL, 2012 WL 1133643, at *5 (W.D. Wash. Apr. 4, 2012) (finding the plaintiff's contention that there was no other comparable property in the city to perform its activities unsupported and unpersuasive, and rejecting plaintiff's general assertion the government imposes a substantial burden on religious exercise when it restricts an assembly's ability to lease a desired space); *cf. Int'l Church*, 673 F.3d at 1067 (finding a substantial burden could exist where there was testimony that "no other suitable sites exist[ed] in the City to house the Church's expanded operations"). Because Plaintiff has failed to demonstrate that a government action has imposed a substantial burden on the plaintiff's religious exercise, the Court need not consider whether the government's action furthers a compelling governmental interest in the least restrictive manner possible.

### d. "Equal Terms" Provision

Next, the Court turns to whether Plaintiff is entitled to summary judgment under the "equal terms" provision of RLUIPA. The Court concludes summary judgment is not warranted here. The statutory text of the "equal terms" provision provides: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The Ninth Circuit has described the elements of this prohibition as follows: "(1) there must be an imposition or implementation of a land-use regulation, (2) by a government, (3) on a religious assembly or institution," (4) that is "on less than equal terms with a nonreligious assembly or institution." *Centro Familiar*, 651 F.3d at 1170–71.

The Court concludes there is a dispute of material fact as to whether Plaintiff is a religious assembly or institution.[17] During his deposition, Daniel Scinto, testified as follows:

> Q: . . . Is the Scinto Foundation a religious organization?
>
> A: I'm not sure how to answer that. I can tell you what we were. We are a 509(a)(3) of the Internal Revenue Service Code. . . . We support religious organizations by having activities which are similar to them or the same and/or by giving them money, or donating services . . . .
>
> Q: Okay. But does the Scinto Foundation hold services, religious services? A: No.

*See* Deposition of Daniel J. Scinto ("D. Scinto Depo.") (Dkt. 25) at 64:19–65:8. Particularly in light of this testimony, the Court cannot conclude the evidence Plaintiff

---

[17] Although the Ninth Circuit in *Centro Familiar* does not explicitly say so, it has indicated that, under the equal terms provision of RLUIPA, Plaintiff must be a religious assembly or institution. *See Centro Familiar*, 651 F.3d at 1171 ("[O]nce the religious institution establishes a prima facie case . . . ."); *id.* ("It is undisputed that Centro Familiar is a religious institution . . . ."); *id.* at 1173 ("The burden is not on the church to show a similarly situated secular assembly . . . ."). The Third Circuit has clearly stated a plaintiff asserting a claim under this provision must show it is a religious assembly or institution, *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 270 (3d Cir. 2007), as has the Eleventh Circuit, *see Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1307 (11th Cir. 2006).

cites concerning its mission is sufficient to support a finding that Plaintiff is a religious institution. *See* F. Scinto Decl. ¶ 1 ("In our Articles of Incorporation, the Seventeenth Article, paragraph 7 states the following supported mission: 'The Foundation shall engage in, conduct, and promote religious, artistic, and environmental activities primarily in Orange County, California.'").[18]

Further, the Court concludes Plaintiff has failed to meet its initial burden of showing the absence of a dispute of material fact as to whether there was "an imposition or implementation of a land-use regulation" on Plaintiff by the government, and whether Plaintiff was treated on less than equal terms with a nonreligious assembly or institution. *See Victory Ctr.*, 2012 WL 1133643, at *6.

### 2. Free Exercise Clause of the First Amendment

Plaintiff also appears to bring its claim for "discriminatory zoning laws" based on violations of the Free Exercise Clause of the First Amendment. *See* Mot. at 21. The First Amendment, applicable to the states through the Fourteenth Amendment, provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., amend. I. However, "the Free Exercise Clause does not inhibit enforcement of otherwise valid regulations of general application that incidentally burden religious conduct." *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 804 (9th Cir. 2011) (citation and internal quotation marks omitted). A neutral law of general application "need not be supported by a compelling government interest even when 'the law has the incidental effect of burdening a particular religious practice.'" *Stomans, Inc. v. Wiesman*, 794 F.3d 1064, 1075 (9th Cir. 2015), *cert. denied*, No. 15-862, 2016 WL 81161 (U.S. June 28, 2016) (citation omitted). Such laws need only survive rational basis review. On the other hand, strict scrutiny applies to laws that are not neutral or not generally applicable. *Id.*

---

[18] The Court notes Plaintiff has not cited to its articles of incorporation; in its Motion, the only evidence Plaintiff points to concerning its mission, is Francine Scinto's declaration. It is not clear whether Francine Scinto is directly quoting the articles of incorporation.

The Court finds summary judgment is not warranted. Plaintiff has failed to meet its initial burden of "identifying the elements of the claim . . . and evidence that it believes demonstrates the absence of material fact." *Stanley*, 11 F. Supp. 3d at 994. Plaintiff fails to present any coherent argument as to how the undisputed facts are sufficient to establish a claim under the First Amendment. Indeed, Plaintiff does not adequately set forth or discuss the zoning regulation it challenges. Moreover, the one undisputed fact contained in the SUF concerning this claim is a legal conclusion that Plaintiff fails to support with evidence in the record. *See* SUF No. 10 ("Defendant specifically prohibited 'the free exercise' of religion by unreasonabl[y] and illegally refusing for a Church to be in a commercial zone that allows uses nearly identical to those of a Church.").[19]

Based on the record before it, the Court cannot conclude, as a matter of law, the zoning regulation at issue prohibits the free exercise of religion. *See Reverge Alsemo*, 2013 WL 1934175, at *2 ("[P]laintiffs fail to explain how the Shasta County Code section 16.04.150, the basis for the stop order which plaintiffs argue violated their right to free exercise, infringes upon or restricts religious practices because of their religious motivation or is selectively applied only to conduct motivated by religious belief.").

For the foregoing reasons, the Court DENIES Plaintiff's Motion as to its claim for "discriminatory zoning laws."

## V.     Disposition

For the foregoing reasons, the Court DENIES Plaintiff's Motion in its entirety.

_David O. Carter_
————————————————
DAVID O. CARTER
UNITED STATES DISTRICT
JUDGE

Dated:  August 3, 2016

---

[19] The only evidence Plaintiff cites in support of SUF No. 10 is "Letter from Defendant to Plaintiff's tenant, April 10, 2008." This is the same letter discussed above – a letter that does not even appear to be in evidence.